Karl A. Schmidt SBN 62672
Michael B. Mellema SBN 247323
Rudolph G. Klapper SBN 300721
PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN
A Professional Corporation
555 S. Flower St., 30th Floor
Los Angeles, California 90071-2440
Telephone:  (213) 683-6500
Facsimile:   (213) 683-6669
kschmidt@pmcos.com
mmellema@pmcos.com

Attorneys for Plaintiff Trustees Marvin Kropke, John A. Brown, Doug Chappell, Barry Meyer, Richard Reed, Roger Roper, James Wilson, Peggy Brown, Eric Cartier, Tom Ispas and Fred Neubauer.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Marvin Kropke, John A. Brown, Doug Chappell, Barry Meyer, Richard Reed, Roger Roper, James Wilson, Peggy Brown, Eric Cartier, Tom Ispas and Fred Neubauer in their capacity as Trustees of the Southern California IBEW-NECA Pension Trust Fund,<br><br>Plaintiffs,<br><br>v.<br><br>Andy Dunbar, Gerald Miney, Michael Richard, Dave Kurtz, Thomas Mittlebrun and Ben Rosenberg in their capacity as Trustees of the Electrical Workers' Pension Trust Fund of Local Union No. 58, IBEW Detroit, Michigan, and Richard A. Markee, Ted Anton, Paul Kelley, Russ Smith, Sean Egan, John Bond, Jr., Thomas Eastwood, and David Fashbaugh in their capacity as Trustees of the Michigan Electrical Employees' Pension Fund,<br><br>Defendants. | Case No.  2:16-cv-8753<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

Plaintiff Trustees Marvin Kropke, John A. Brown, Doug Chappell, Barry Meyer, Richard Reed, Roger Roper, James Wilson, Peggy Brown, Eric Cartier, Tom Ispas and Fred Neubauer (collectively, "Plaintiffs") for their Complaint against Defendant Trustees Andy Dunbar, Gerald Miney, Michael Richard, Dave Kurtz, Thomas Mittlebrun, Ben Rosenberg, Richard A. Markee, Ted Anton, Paul Kelley, Russ Smith, Sean Egan, John Bond, Jr., Thomas Eastwood, and David Fashbaugh (collectively, "Defendant Trustees"), bring this action to determine the rights of the parties to certain so-called off-benefit contributions made by participating employers to the Southern California IBEW-NECA Pension Trust Fund (the "Trust") pursuant to collective bargaining agreements in compliance with successive Rehabilitation and Funding Improvement Plans mandated under ERISA. Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this Complaint pursuant to the Employee Retirement Income Security Act of 1974 as amended ("ERISA") section 502(a)(3), 29 U.S.C. section 1132(a)(3), because it includes a claim for declaratory relief regarding the Trust fiduciaries' desire to clarify their obligations with regard to a portion of the Trust's assets and to enforce the terms of the Trust.

2. Venue is proper in this judicial district pursuant to ERISA section 502(e)(2), 29 U.S.C. section 1132(e)(2), because the Trust is administered in this District.

## THE PARTIES

3. Plaintiffs are Trustees of the Trust which holds the assets maintained to provide pension benefits under the IBEW-NECA Southern California Defined Benefit Pension Plan, an ERISA multiemployer plan.

4. Defendants Andy Dunbar, Gerald Miney, Michael Richard, Dave Kurtz, Thomas Mittlebrun and Ben Rosenberg are Trustees of the Electrical Worker's Pension Trust Fund of Local Union No. 58, IBEW Detroit, Michigan,

holding assets maintained to provide pension benefits under an ERISA multiemployer plan.

5. Defendants Richard A. Markee, Ted Anton, Paul Kelley, Russ Smith, Sean Egan, John Bond, Jr., Thomas Eastwood, and David Fashbaugh are Trustees of the Michigan Electrical Employees' Pension Fund, holding assets maintained to provide pension benefits under an ERISA multiemployer plan.

## TRUST TRAVELERS AND THE RECIPROCAL AGREEMENT

6. Formed and operated in compliance with all applicable ERISA requirements, the Trust holds assets contributed under a multi-employer pension plan for members of several Southern California chapters of the International Brotherhood of Electrical Workers and the National Electrical Contractors Association. The Trust is designed to accumulate collectively bargained employer payroll contributions with respect to hours worked by its member-participants and invest them so that sufficient assets are available to pay participants' pensions at retirement. The Trust has been providing benefits for its participants without interruption for over 40 years.

7. Larger companies who employ union electricians often succeed in bids for projects outside their home office jurisdictions. For such "foreign" region jobs, these companies typically assign lead persons or other key union members from their home shops to travel to the foreign region and work the job to completion. Many other individual union member electricians independently also obtain work outside their home jurisdiction on large, individual construction projects or as a result of spikes in general construction work in particular geographical areas. Under a certain national inter-union agreement (see "Reciprocal Agreement" below), for benefit plan purposes these electricians are called "travelers" when working away from home.

8. When such travelers are working in other than their home union jurisdictions, payroll benefit contributions are made to the foreign jurisdiction

Health & Welfare, pension and other benefit plans.  As this protocol interrupts the flow of contributions supporting the traveler's continued participation in and coverage from his "home" Health & Welfare and pension trusts, the International Union many years ago developed and implemented a "money follows the man" reciprocal agreement (the "Reciprocal Agreement").  The Trust became a signatory to an updated version of this Reciprocal Agreement in 2002, a true and correct copy of which is attached herein as Exhibit A.

9. Under the Reciprocal Agreement, benefit contributions paid according to the collective bargaining agreement in the place where the work is being performed are forwarded by the trust in the work site jurisdiction back to the traveler's home trust fund.  Pursuant to the Reciprocal Agreement, "…when an employee's home fund or fund or funds receive(s) contributions pursuant to the Reciprocal Agreement, it accepts the money and hours [worked for record keeping purposes] and it credits them pursuant to its rules.  Hours for vesting purposes will be credited on an hour-for-hour basis, and credit for benefit accrual will be done on an equitable basis, considering the relationship of the contribution rates between the home fund or funds and the transferring fund or funds."

## THE TRUST REHABILITATION PLAN

10. As a result of the financial recession in 2008, the Trust suffered significant investment losses.  Under the Pension Protection Act of 2006 ("PPA") and the Worker, Retiree and Employee Recovery Act of 2008 ("WRERA"), the Trust was required to review and classify the status of its funding according to prescribed safe ("Green"), marginal ("Endangered" – "Yellow" and "Seriously Endangered" – "Orange") or poor ("Red" or "Critical") type categories.  Trust actuaries initially certified the Plan's funding status to be in neither critical nor endangered status, the so-called "Green Zone".

11. However, in the following years stock markets plunged and the Trust, like so many investors, suffered significant losses.  As a result, on September 29,

2009, the Plan's actuary certified that the Plan was in critical status ("Red Zone") for the Plan Year July 1, 2009 through June 30, 2010. Therefore, as required by ERISA, the Trustees adopted a Rehabilitation Plan which included both benefit and contribution changes. On the contribution side this included new supplemental employer plan contributions that were dedicated solely to improving plan funding and specifically not to increases in any established levels of benefits for Trust participants (the "Rehabilitation Plan").

In the Plan participant and beneficiary Notice of the increased contribution rate schedules (also by law filed with the Secretary of Labor and the Pension Benefit Guarantee Corporation) the Trust was explicit in stating that the newly added layer of "non-benefit" or "off-benefit" contributions (i.e., amounts in excess of the collective bargaining agreement's prescribed basic contributions for previously established benefits) were "solely to improve the Trust's funding and [were to] result in no [additional] [participating member] benefit accruals whatsoever."[1]

---

[1] The relevant text of the Trust's Notice reads as follows:

> "Off-benefit contributions payable under the Schedules result in no benefit accruals and are devoted solely to improving the funding status of the Plan. The same is true in terms of any employer surcharge contributions received or payable for periods prior to the collective bargaining parties' adoption and implementation of a Rehabilitation Plan Schedule. Accordingly, individuals who work inside the jurisdiction of this Plan and have employer contributions transferred to another Plan pursuant to the money-follows-the-person Reciprocity Agreement shall see all increased off-benefit contributions under any Schedule and all employer surcharge contributions remain in this Plan for funding purposes only. Only on-benefit contributions received will be transferred.
>
> The benefits of an Alternative Schedule are available only for work performed under a Collective Bargaining Agreement or Subscription Agreement which specifically adopts the Alternative Schedule. When a Participant works outside the jurisdiction of this Plan, the individual, absent an extraordinary agreement, is not working under an agreement which adopts an Alternative Schedule. When such a Participant reciprocates contributions to this Plan pursuant to the money-follows-the-person Reciprocity Agreement for work

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

12. These improvements helped the Plan regain Green Zone status for the two following years, through June 30, 2012. However, on September 28, 2012, the Plan's actuary certified the Plan's funding to be in endangered status ("Yellow Zone") for the Plan Year July 1, 2012 through June 30, 2013. The Plan therefore adopted a Funding Improvement Plan as required by ERISA, including resorting to additional benefit and contribution changes and again reinstating "off-benefit" supplemental contributions, which were specifically designed for funding improvement only.[2] The Plan continued to be in endangered status through June 30, 2015.

13. On September 28, 2015, the Plan's actuaries certified it to be in the "Orange Zone," also known as "Seriously Endangered" status; again, with continuing off-benefit contributions dedicated solely to improving the funding status of the Plan and in no way related to benefit accruals.[3] On September 28, 2016 the Plan's actuaries projected the Plan to be in critical status for the Plan Year beginning July 1, 2018, thus allowing the Plan to elect critical (Red Zone) status effective July 1, 2016.[4] Again in this Rehabilitation Plan, as in the previous Rehabilitation Plan and Funding Improvement Plan, there is the same language separating off-benefit contributions from any benefit accruals and devoting such contributions solely to improving the funded status of the Plan.

14. Throughout the periods of Yellow, Orange and Red Zone statuses, the Plan, through collective bargaining agreement amendments carefully negotiated

---

performed outside of this Plan's jurisdiction, it must be credited to the Default Schedule absent an extraordinary agreement by the employer to adopt an Alternative Schedule for such work."

[2] The relevant provision of this Funding Improvement Plan is identical to the provision quoted in footnote 1 *supra*.

[3] The relevant provision of the Funding Improvement Plan update is identical to the provision quoted in footnote 1 *supra*.

[4] The relevant provision of the July 1, 2016 Rehabilitation Plan is identical to the provision quoted in footnote 1, *supra*.

- 6 -
COMPLAINT FOR DECLARATORY RELIEF

with the representative unions, continued to require all participating employers to make supplemental "off-benefit" contributions solely for the purpose of improving the underfunded status of the Plan and not connected to any of the specific units of benefits participants could accrue under the terms of the Plan. In each iteration of such Plans, these additional off-benefit contributions were specified in both "Alternative" employer contribution schedules for adopting collective bargaining parties, and a so-called "Default Schedule" for any bargaining parties who might fail to agree on one of the Alternative Schedules and for travelers. Thus, as part of the Funding Improvement and Rehabilitation Plans, the Trust allocated such off-benefit employer contributions deriving from both local and traveler work in the Trust's jurisdiction to Trust funding improvement while continuing to retain employer contributions in support of local members' prescribed benefits in the Trust, and to remit employer contributions in support of benefits for travelers to their home trusts under the Reciprocity Agreement. True and correct copies of the Trust's Rehabilitation Plans and Funding Improvement Plans are attached herein as Exhibit B.

## CONFLICT BETWEEN THE REHABILITATION PLAN AND THE RECIPROCAL AGREEMENT

15. Since 2010, the Trust has continued the funding improvement mandate of the Rehabilitation Plans and Funding Improvement Plan in forwarding only the benefit-related portion of employer contributions with respect to traveler hours while allocating all "off-benefit" employer contributions with respect to traveler hours for the Trust's funding improvement purposes, in order to fully comply with its obligations under the PPA. No off-benefit contributions (local or traveler) result in benefit accruals for participants, and instead are used solely to improve the funding status of the Trust.

16. As the Reciprocal Agreement and its earlier incarnations long preceded, and thus could not have anticipated, the 2008 recession and the Trust's

COMPLAINT FOR DECLARATORY RELIEF

supplemental contribution measures required under the PPA and WRERA, the current Reciprocal Agreement does not distinguish between contributions made with respect to benefits and contributions made solely for supplemental funding purposes.

17. Definitional Section 1(g) of the Reciprocal Agreement defines "Contributions" as contractually required employer payments "…to a Participating Fund party hereto *for the purpose of providing a plan of benefits for Temporary or Permanent employees*." Emphasis added.

18. Definitional Section 1(k) of the Reciprocal Agreement defines "Monies" as follows: "An amount equivalent to the Contributions received by a Participating Fund *on behalf of a Temporary Employee*." Emphasis added.

19. Reciprocal Agreement Section 11 – "Effect of Election on Participating Funds – the Transfer of *Monies*" provides in relevant part "…the Participating Fund(s) in whose area [a traveler] is working shall make a reciprocal transfer by keeping a separate account of the collections of Contributions due for the work of that Temporary Employee and transferring to the Temporary Employee's Home Fund(s) an amount of money equal to all *Contributions* received on behalf of the Temporary Employee." Emphasis added.

20. Section 12(a) of the Reciprocal Agreement ["Amount Transferred to Home Fund] further provides as follows: "The Participating Fund(s) shall transfer to the Temporary Employee's Home Fund(s) an amount of money equal to all *Contributions* received. There shall be no administrative fee charged by a Participating Fund for the transfer or for any other reason." Emphasis added.

21. On October 3, 2016, the Trust received a letter from counsel for the Electrical Workers' Pension Trust Fund of Local Union No. 58, IBEW Detroit, Michigan (the "Detroit Fund"). That letter served as notice under Section 31 of the Reciprocal Agreement that the Detroit Fund disputed the Trust's practice of allocating off-benefit contributions made with respect to traveler hours worked.

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION

- 8 -
COMPLAINT FOR DECLARATORY RELIEF

The Detroit Fund argued that this practice violates the provisions of the Reciprocal Agreement because the latter requires the transfer of "all contributions" made on behalf of travelers. The Detroit Fund demanded the Trust transfer all such contributions. A true and correct copy of the Detroit Fund letter is attached herein as Exhibit C (the "Detroit Fund Demand Letter").

22. On October 5, 2016, the Trust received a letter from counsel for the Michigan Electrical Employees' Pension Fund (the "Michigan Fund"). As counsel for the Michigan Fund is also counsel for the Detroit Fund, the letter was nearly identical and mirrored the Detroit Fund's notice of dispute. A true and correct copy of the Michigan Fund letter is attached herein as Exhibit D.

## THE TRUST DISPUTES THAT ITS PRACTICE OF WITHHOLDING OFF-BENEFIT CONTRIBUTIONS IS IMPROPER

23. The Detroit and Michigan Funds argue that the terms of the Reciprocal Agreement prevent the Trust from implementing a Rehabilitation Plan that provides for allocating of off-benefit contributions resulting from traveler hours of work. In support of its argument, the Detroit Fund cited Sections 1(g) and 1(k) of the Reciprocal Agreement.

24. As the Rehabilitation Plan makes clear, the purpose of the off-benefit contributions is not to "provid[e] a plan of benefits for [travelers or] Permanent Employees." Instead, these contributions are intended solely to improve the funding status of the Trust and do not result in *any* future benefit accruals for participant/home employees or for travelers. Accordingly, these additional supplemental off-benefit contributions are separate and distinct from the basic contributions made for the purpose of specified participant benefit accruals, and thus do not meet the definition of "Contributions" under Section 1(g) of the Reciprocal Agreement, which requires Contributions to be "…for the purpose of providing a plan of benefits…"

//

COMPLAINT FOR DECLARATORY RELIEF

25. Further, these off-benefit contributions do not meet the definition of "Monies" in Section 1(k) of the Reciprocal Agreement because they are not made or received "on behalf of a [traveler]."

26. Thus, these off-benefit contributions cannot and should not be considered when interpreting Section 11 of the Reciprocal Agreement, which requires the Trust to "transfer to the [traveler's] Home Fund(s) an amount of *money* equal to *all Contributions* received *on behalf of the [traveler]*." Emphasis added. Because these off-benefit contributions are not made on behalf of the traveler and the monies equivalent to these contributions are not received on behalf of the traveler, but rather solely to improve the funding health of the Trust, the Reciprocal Agreement's nominal "money follows the man" provision does not reach these off-benefit contributions.

27. The current version of the Reciprocal Agreement was executed years before the PPA, WRERA and the 2008 recession caused pension trust fund sponsors and related unions across the country to examine the funding status of their pension plans, and collectively bargain to implement sometimes drastic measures in order to shore up plan funding and protect the pension benefits of thousands of Trust participants and beneficiaries. Through arduous negotiations between labor and management, and based on advice of Trust actuaries after careful study of projected total hours to be worked in the Trust's jurisdiction, off-benefit contributions amounts were designed and determined to be solely used to improve the funding status of the Trust. Under this protocol and with this approach the Trust has been able to continue to remit all traveler benefit-related Contributions as defined under the Reciprocity Agreement while meeting its statutory obligations to ensure its long-term health.

28. The Detroit and Michigan Funds' argument that the Reciprocity Agreement "requires the transfer of *all* Contributions" ignores the limitations the Reciprocity Agreement places on the defined term "Contributions." The Detroit

and Michigan Funds take the position that the off-benefit contributions are "still a contribution as defined by the Agreement because the purpose of that contribution is to provide a plan of benefits for Permanent Employees." Detroit Fund Demand Letter at 3. However, the purpose of the off-benefit contributions is *not* to provide a plan of benefits for Trust participants, because the Rehabilitation Plan, pursuant to ERISA, explicitly states that no benefit accrual may result from these contributions. Instead, it is solely to ensure the health of the Trust.

29. A State of Washington federal District Court case, *Lehman v. Nelson et al.*, No. C13-1835RSM, 2014 WL 4540160 (W.D. Wash. 2014), presents similar circumstances but clearly distinguishable facts from this case. In *Lehman*, the pension trust involved designed its rehabilitation plan to withhold the first dollar of an affected employer's required payroll contributions for each hour of traveler work, to improve the funding of the pension plan involved. The District Court held that this diversion of the first dollar of hourly contributions meant for traveler benefits violated both the Reciprocity Agreement and section 305(e)(6)(A) of ERISA. *Id.* at *9.

30. The *Lehman* defendant's withholding requirement was a "carving out" of an existing contribution schedule—by taking the first dollar of each hourly contribution—that directly diverted an employer's benefit contribution to the fund on behalf of the participant. *Id.* at *8. In this action, the Trust is not withholding an employer's *benefit* contribution but is instead requiring an additional contribution that is *not* related to any benefits, *on top of* the regular benefit contribution. This is proper and, indeed, necessary under the PPA and WRERA for the Trust to maintain required progress toward a healthy funding status.

31. The District Court in *Lehman* also held that the defendant trustees were in violation of ERISA section 305(e)(6)(A), 29 U.S.C. section 1085(e)(6)(A). As the District Court explained, that section "provides a statutory floor on the rate of future benefit accruals under a rehabilitation plan default

PARKER MILLIKEN
CLARK O'HARA &
SAMUELIAN, A
PROFESSIONAL
CORPORATION

- 11 -
COMPLAINT FOR DECLARATORY RELIEF

schedule equal to 1% of the contributions made *on the participant's behalf*." *Id.* at \*9.  Because the *Lehman* defendants were withholding the first dollar of each hourly contribution, the District Court held that the defendants "diverted contributions" without providing "some minimum amount of pension benefits accrual." *Id.*  The District Court noted that funds "cannot entirely repurpose contributions" without providing a benefit accrual.

32. Such a diversion of benefit-related contributions may well trigger ERISA section 305(e)(6)(A), but the District Court's analysis is inapplicable to the Trust's Rehabilitation Plan.  Neither the Trust's employer's Trustees nor union Trust's Trustees ever intended for these off-benefit contributions to be paid to participants in the form of any benefits, and thus they do not meet the definition of contributions "made on behalf of [a plan's] participants."  The Rehabilitation Plan *added* a non-benefit contributions requirement—it did not, as in *Lehman*, repurpose an already-existing benefit contribution to use for funding, which could well be understood as an improper shifting of contributions intended for benefit accrual under ERISA.

33. The *Lehman* defendants filed an appeal on June 10, 2015, to the Court of Appeals for the Ninth Circuit, seeking a review of the District Court's decision.  *See Lehman v. Nelson, et al.*, No. 15-35457 (9th Cir. 2015).  However, given the distinctions between the facts in *Lehman* and the circumstances surrounding the Trust and the Detroit and Michigan Funds, the Trust does not believe a Ninth Circuit decision in this matter will effectively resolve the issues.

34. The Trust denies that it owes the Detroit and Michigan Funds the amount of the off-benefit contributions its employers have contributed to the Trust with respect to Detroit Fund and Michigan Fund travelers working in the Trust's jurisdiction.  The Trust asserts that its interpretation of the Reciprocity Agreement is accurate and that the Rehabilitation Plan is lawful under ERISA.

//

COMPLAINT FOR DECLARATORY RELIEF

# FIRST CAUSE OF ACTION

(Declaratory Relief)

35. The Trust incorporates herein by reference paragraphs 1 through 34 of this complaint.

36. As set forth above, an actual controversy has arisen and now exists between the Trust and the Detroit and Michigan Funds.

37. Accordingly, the Trust desires a judicial determination of the parties' respective rights and duties, and a declaration that: a) the Trust's allocation of off-benefit contributions made by participating Trust employers with respect to hours worked by travelers in its jurisdiction is lawful under ERISA; (b) the Trust's allocation of off-benefit contributions made by participating Trust employers with respect to hours worked by travelers in its jurisdiction is appropriate under the Reciprocity Agreement; (c) the Detroit Fund has no claim against and is entitled to nothing from the Trust with regards to such off-benefit contributions; and (d) the Michigan Fund has no claim against and is entitled to nothing from the Trust with regards to such off-benefit contributions.

38. A judicial declaration is necessary and appropriate under the circumstances so that the Trust may ascertain the parties' respective rights and duties and eliminate any dispute regarding the subject off-benefit contributions made by Trust employers with respect to travelers working in the Trust's jurisdiction.

# RELIEF REQUESTED

WHEREFORE, Trust prays for judgment against Defendants as follows:

1. For an order declaring that:
   a. the Trust's allocation of the off-benefit contributions made by participating Trust employers with respect to hours worked by travelers in its jurisdiction is lawful under ERISA;

  b. the Trust's allocation of the off-benefit contributions made by participating Trust employers with respect to hours worked by travelers in its jurisdiction is appropriate under the Reciprocity Agreement;

  c. the Detroit Fund has no claim against and is entitled to nothing from the Trust with regards to such off-benefit contributions; and

  d. the Michigan Fund has no claim against and is entitled to nothing from the Trust with regards to such off-benefit contributions.

Respectfully submitted

DATED: November 23, 2016

PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN
A Professional Corporation

By: /s/Michael B. Mellema
  MICHAEL B. MELLEMA
  Attorneys for Plaintiff Trustees Marvin Kropke, John A. Brown, Doug Chappell, Barry Meyer, Richard Reed, Roger Roper, James Wilson, Peggy Brown, Eric Cartier, Tom Ispas and Fred Neubauer

PARKER MILLIKEN CLARK O'HARA & SAMUELIAN, A PROFESSIONAL CORPORATION